# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUE CINDY TERRY,<br>            Plaintiff<br><br>         v.<br><br>MICHAEL DEWINE, *et al.*,<br>            Defendant | Civil Action No. 14-1112 (CKK) |

## MEMORANDUM OPINION
(December 17, 2014)

Lue Cindy Terry,[1] proceeding *pro se*, brought this action against Defendants Michael DeWine, Attorney General of Ohio; Judge Kimberly Cocroft of the Franklin County, Ohio, Court of Common Pleas; Zach Scott, Franklin County, Ohio, Sheriff; and Ron O'Brien, Franklin County, Ohio, Prosecutor. (The Court refers to all Defendants but DeWine as the Franklin County Defendants.) While the precise nature of the challenges is far from clear from the pleadings, Plaintiff attempts to challenge actions surrounding the foreclosure of a property in Ohio. *See* Compl. at 2. Presently before the Court is the Franklin County Defendants' [7] Motion to Dismiss, as well as Plaintiff's first [4] Motion for Immediate Default Judgment and Award and second [10] Motion for Immediate Default Judgment and Award. Upon consideration of the pleadings,[2] the relevant legal authorities, and the record as a whole, the Court GRANTS the

---

[1] It is not entirely clear whether Lue Cindy Terry is the sole plaintiff in this action or whether Richard N. Terry is proceeding against Defendants in this action, as well. Although the complaint references Richard Terry in its body, its caption refers only to Lue Cindy Terry, and the subsequently filed documents refer only to Lue Cindy Terry, as well. The Court accordingly refers to Lue Cindy Terry as the sole plaintiff.

[2] The Court's consideration has focused on the following documents:
- Original Civil Complaint, ECF No. 1 ("Compl.");
- Pl.'s Motion for Immediate Default Judgment and Award, ECF No. 4 ("First Default Judgment Motion");
- Defendants The Honorable Judge Kimberly Cocroft, Zach Scott and Ron O'Brien's Motion to Dismiss, ECF No. 7 ("Franklin County Defs.' Mot. to Dismiss");

Franklin County Defendants' motion to dismiss. The Court concludes that there is no personal jurisdiction over the Franklin County Defendants. The Court also concludes that, under the *Rooker-Feldman* doctrine, it does not have jurisdiction over this action effectively challenging a state-court final judgment. Because the Court has no jurisdiction over any of the claims in this action, the Court does not address any of the Franklin County Defendants' arguments pertaining to the merits. Although Defendant DeWine has not appeared in this action, the Court also concludes that there is no jurisdiction over the claims against him for the reasons described below. Therefore, the Court *sua sponte* dismisses the claims against DeWine. For these and related reasons, the Court denies Plaintiff's first and second default judgment motions, as well. The Court DISMISSES this action in its entirety.

# I. BACKGROUND

## A. Factual Background

The facts of this case are far from clear, and Plaintiff's filings subsequent to the complaint do little to dispel the absence of clarity. At core, this action appears to pertain to the foreclosure of a property in Ohio state court. *See* Compl at 1 ("[T]his proceeding seeks to challenge the alleged free and clear title awarded to [the bank] in Civil Foreclosure Case No. 13-

---

- Memorandum of Points and Authorities in Opp'n of Pl.'s Mot. for Immediate Default Judgment, ECF No. 8 ("First Default Judgment Opp'n");
- Pl.'s Motion for Immediate Default Judgment and Award, ECF No. 10 ("Second Default Judgment Motion");
- Pl.'s Memorandum in Opposition to Granted Minute Order, ECF No. 12 ("Pl.'s Opp'n");
- Mem. of Points & Authorities in Opposition to Pl.'s Second Motion for Immediate Default Judgment, ECF No. 14 ("Second Default Judgment Opp'n");
- Pl.'s Mot. to Show Cause Under Complete Jur. over Michael DeWine; i.e. "Attorney General," ECF No. 16 ("Pl.'s Show Cause Response"); and
- Pl.'s Nov. 29, 2014 Response Deadline, ECF No. 21 ("Pl.' Service Response").

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

CV-006485 in this Court"). Because the Court concludes, below, that it has no jurisdiction over *any* of the claims in this action and because Plaintiff has not conveyed them in a clear fashion, it is not necessary to recite the facts further at this point. Insofar as the facts of this case are essential to resolving the jurisdictional questions before the Court, the Court presents them below.

### B.  Procedural History

On June 25, 2014, Plaintiff filed this action, proceeding *pro se*. On July 7, 2014, Plaintiff filed an affidavit of service with the acknowledgment of service delivery via Certified Mail to all four defendants at their business addresses.[3] As of July 8, 2014, no defendant had filed an appearance, and Plaintiff filed a [4] Motion for Immediate Default Judgment and Award.[4] On August 1, 2014, the Court "reluctantly" granted the Franklin County Defendants' [6] Motion for Extension of Time to File Response to Plaintiff's Complaint and Plaintiff's Motion for Immediate Default Judgment. Those defendants complied with the deadline established by the Court's order, filing both their [7] Motion to Dismiss and their [8] Memorandum of Points and Authorities in Opposition of Plaintiff's Motion of Immediate Default Judgment. Shortly thereafter, Plaintiff filed a second [10] Motion for Immediate Default Judgment and Award,[5] and the Franklin County Defendants filed an opposition. After the Court advised Plaintiff that, if

---

[3] The Court concludes, below, that DeWine was only served in his official capacity and that, insofar as Plaintiff seeks to sue him in his individual capacity, proper service has not be effected.

[4] In her motion, Plaintiff makes no mention of any Defendants but DeWine but refers to "defendants," using the plural form, at least once. *See* Mot. for Immediate Default Judgment and Award, ECF No. 4 ("First Default Judgment Motion"), at 1-4. The Franklin County Defendants responded to this motion. *See* Mem. of Points and Authorities in Opp'n of Pl.'s Mot. for Immediate Default Judgment, ECF No. 8 ("Franklin County Defs.' Opp'n to First Default Judgment Motion"). Accordingly, the Court treats the motion as addressing all four defendants.

[5] Once again it is unclear whether the motion is directed at all defendants. *Cf. supra*, note 4. The Court treats it as if it were directed to all defendants in an abundance of caution.

Plaintiff did not respond to the Franklin County Defendants' Motion to Dismiss, the Court may

grant the motion as conceded, Plaintiff filed an opposition to that motion. Defendant DeWine has

yet to file a response to the complaint or to file any other papers in this action.

Subsequent to the completion of the aforementioned briefing on the motions before the

Court, the Court issued an order requiring Plaintiff to show cause as to why this Court has

jurisdiction over the claims against DeWine. *See* Order, dated October 14, 2014, ECF No. 15.

The gravamen of Plaintiff's response appears to be that Plaintiff is not suing Defendant DeWine

in his official capacity, and that therefore the Court's concerns with respect to jurisdiction are of

no moment. *See* Pl.'s Show Cause Response at 2. Plaintiff also claims, for the first time, that

there is diversity jurisdiction over this action as well. *Id.* at 4-5. In response to Plaintiff's

responsive filing, the Court issued an order informing Plaintiff of the Court's conclusion that

Plaintiff had not yet served Defendant DeWine in his *individual* capacity and requiring Plaintiff

to file proof of service of DeWine in that capacity. *See* Order, dated November 17, 2014, ECF

No. 17. Plaintiff filed a response but did not file any additional proof of service. *See* Pl.'s Service

Response. The gravamen of her response appears to be that there is no difference between suing

DeWine in his individual capacity and suing him in his official capacity such that additional

service is necessary in order to proceed against DeWine in his individual capacity. *See id.* at 1.[6]

---

[6] Plaintiff attempted to amend her complaint by filing an amended complaint without an
accompanying motion. The Court denied leave to file that amended complaint because it did not
comport with the requirements of Federal Rule of Civil Procedure 15(a). The Court informed
Plaintiff that

> if Plaintiffs seek to file an amended complaint, Plaintiffs must file a motion
> requesting to do so with the Court. That motion shall include a statement
> indicating whether the opposing parties consent to the amendment and shall
> include a copy of the proposed amended complaint. In the motion, Plaintiffs must
> also explain the reasons for seeking to amend the complaint, including a
> description of any of the original claims that now being dropped, any new claims
> that are now being added, or any claims being modified.

## II. LEGAL STANDARD

The Franklin Country Defendants move to dismiss Plaintiff's complaint pursuant to
Federal Rule of Civil Procedure 12(b)(2), arguing that the Court lacks personal jurisdiction over
them, and pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks
subject matter jurisdiction over Judge Cocroft because of the *Rooker-Feldman* doctrine.
Moreover, the Court is obligated to assure itself of its jurisdiction "whether or not the parties
challenge it." *Wagner v. Fed. Election Comm'n,* 717 F.3d 1007, 1010 (D.C. Cir. 2013); *accord
Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1138 (D.C. Cir.
2014).

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff bears the
burden of establishing a factual basis for asserting personal jurisdiction over a defendant. *See
Crane v. N.Y. Zoological Soc'y,* 894 F.2d 454, 456 (D.C. Cir. 1990). To establish that personal
jurisdiction exists, the plaintiff cannot rest on bare allegations or conclusory statements but
"must allege specific acts connecting [each] defendant with the forum." *Second Amendment
Found. v. U.S. Conference of Mayors,* 274 F.3d 521, 524 (D.C. Cir. 2001) (internal quotation
marks omitted). "To make such a showing, the plaintiff is not required to adduce evidence that
meets the standards of admissibility reserved for summary judgment and trial[;]" but rather, the
plaintiff may "rest her arguments on the pleadings, 'bolstered by such affidavits and other
written materials as [she] can otherwise obtain.' " *Urban Inst. v. FINCON Servs.,* 681 F. Supp.
2d 41, 44 (D.D.C. 2010) (quoting *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C. Cir. 2005)). In the
case of a *pro se* plaintiff, although the Court is required to construe the *pro se* complaint
liberally, *see Howerton v. Ogletree,* 466 F. Supp. 2d 182, 183 (D.D.C. 2006), "[p]ro se plaintiffs

Order, dated November 17, 2014, ECF No. 18. Plaintiff has not subsequently filed an
amended complaint.

are not freed from the requirement to plead an adequate jurisdictional basis for their claims."
*Gomez v. Aragon,* 705 F. Supp. 2d 21, 23 (D.D.C. 2010) (citation omitted).

"Federal courts are courts of limited jurisdiction" and can adjudicate only those cases entrusted to them by the Constitution or an Act of Congress. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The Court begins with the presumption that it does not have subject matter jurisdiction over a case. *Id*. To survive a motion to dismiss pursuant to Rule 12(b)(1), a plaintiff bears the burden of establishing that the Court has subject matter jurisdiction over its claim. *Moms Against Mercury v. FDA*, 483 F.3d 824, 828 (D.C. Cir. 2007). In determining whether there is jurisdiction, the Court may "consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citations omitted).[7]

### III. DISCUSSION

As noted above, the Franklin County Defendants move to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and pursuant to Rule 12(b) (2) for lack of personal jurisdiction. They also move to dismiss pursuant to Rule 12(b)(6) for failure to timely and properly state a claim upon which relief can be granted.

---

[7] "Generally, a court must convert a motion under Rule 12 into a Rule 56 motion for summary judgment when it considers matters outside the pleadings. A court need not do so, however, if the outside material is considered to determine jurisdictional questions." *Winston & Strawn LLP v. Law Firm of John Arthur Eaves*, No. 1:13-CV-01940 (JDB), — F. Supp. 2d —, 2014 WL 2598748, at *2 (D.D.C. June 11, 2014) (citations omitted). Because all of the questions that the Court considers are jurisdictional, the Court need not convert the motion to dismiss into one for summary judgment even inasmuch as the Court considers limited materials outside of the pleadings.

Generally, courts must evaluate a motion to dismiss for lack of subject matter or personal jurisdiction prior to considering a motion to dismiss for failure to state a claim. *See, e.g., Feinstein v. Resolution Trust Corp.,* 942 F.2d 34, 40 (1st Cir. 1991) ("[C]ourts should ordinarily satisfy jurisdictional concerns before addressing the merits of a civil action."); *Combs v. Bakker,* 886 F.3d 673, 675 (4th Cir. 1989) (finding the district court's decision to first address defendants' Rule 12(b)(6) motion "awkward" and that the "proper course of review" required defendants' Rule 12(b)(2) motion to be considered first). Although this rule need not be mechanically applied, as this Court has previously observed:

> Not only does logic compel initial consideration of the issue of jurisdiction over the defendant—a court without such jurisdiction lacks power to dismiss a complaint for failure to state a claim—but the functional difference that flows from the ground selected for dismissal likewise compels considering jurisdictional and venue questions first. A dismissal for lack of jurisdiction or improper venue does not preclude a subsequent action in an appropriate forum, whereas a dismissal for failure to state a claim upon which relief can be granted can be granted with prejudice.

*IMark Marketing Servs., LLC v. Geoplast S.p.A,* 753 F. Supp. 2d 141, 149 (D.D.C. 2010) (quoting *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963)). In view of these considerations, and because this Court concludes that it plainly lacks both personal jurisdiction over the Franklin County Defendants and subject matter jurisdiction over Plaintiff's claims against those defendants, the Court does not reach the Franklin County Defendants' remaining arguments for dismissal.

In addition, while Defendant DeWine has not appeared in this case, this Court must raise the issue of subject matter jurisdiction over the claims against him *sua sponte*. *See NetworkIP, LLC v. FCC,* 548 F.3d 116, 120 (D.C. Cir. 2008) ("Indeed, [federal courts] must raise [the issue], because while arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice, [federal courts] are forbidden—as [ ] court[s] of limited jurisdiction—from

acting beyond [their] authority, and 'no action of the parties can confer subject-matter jurisdiction upon a federal court.' " *Id.* (quoting *Akinseye v. District of Columbia,* 339 F.3d 970, 971 (D.C. Cir. 2003)).

The Court addresses the multiple jurisdictional bases for dismissing the claims in this action in turn. Lastly, the Court addresses Plaintiff's two motions for default judgment.

## A. No Personal Jurisdiction over Franklin County Defendants

The Franklin County Defendants argue both that Plaintiff has not alleged sufficient contacts with the District of Columbia to give this Court personal jurisdiction over them and that, irrespective of the allegations themselves, such contacts do not exist. *See* Franklin County Defs.' Mot. to Dismiss at 3-4. While Plaintiff filed an opposition to the motion to dismiss, Plaintiff did not respond to any of the Franklin County Defendants' arguments with respect to jurisdiction.[8] *See* Pl.'s Opp'n at 1-4. The Court agrees with the Franklin County Defendants that this Court has no personal jurisdiction over them, requiring dismissal of all claims against them.

---

[8] In Plaintiff's opposition, Plaintiff primarily relies on an opinion from the United States District Court for the Northern District of Ohio, *In re Foreclosure Cases*, 2007 WL 3232430, at *1 (N.D. Ohio Oct. 31, 2007). Plaintiff is correct that "[i]n that case, Judge Boyko dismissed 14 foreclosure actions at one time with scathing footnote comments about the actions of the Plaintiffs and their attorneys." Pl.'s Opp'n at 2. But Plaintiff misses the fundamental distinction between those cases and the case before this Court: Judge Boyko was considering a series of foreclosure actions *brought* in federal court in the first instance while this action is a collateral attack on a foreclosure judgment in Ohio state court. *See* 2007 WL 3232430, at *1-2. Plaintiff's reliance on *Fed. Home Loan Mortgage Corp. v. Schwartzwald*, 979 N.E.2d 1214, 1216 *reconsideration denied sub nom. Fed. Home Loan Mtge. Corp. v. Schwartzwald*, 979 N.E.2d 347 (Ohio 2012), is similarly unavailing. In *Schwartzwald*, the Ohio Supreme Court held that a plaintiff has no standing in a foreclosure action when it "failed to establish an interest in the note or mortgage at the time it filed suit." *Id.* at 1220. The Ohio Supreme Court also held that the "Real-Party-in-Interest Rule" does not allow a litigant to cure the absence of standing by actions subsequent to the filing of a suit. *Id.* at 1223. While these cases illuminate Ohio substantive foreclosure law, none of them help demonstrate that this Court has jurisdiction in this action. To the contrary, Plaintiff's reliance on these cases confirms that she is trying to challenge a state-court foreclosure judgment in this action. As discussed below, this Court has no jurisdiction over such an attempt.

To determine whether it may exercise jurisdiction over a particular defendant, a court in this district must engage in a two-part inquiry. First, the Court must determine that the relevant District of Columbia statutes authorize either general jurisdiction, D.C. Code § 13-423, or specific jurisdiction, D.C. Code § 13-423. *See GTE New Media Servs., Inc. v. BellSouth Corp.,* 199 F.3d 1343, 1347 (D.C. Cir. 2000); *see also Edmond v. United States Postal Serv. Gen. Counsel,* 949 F.2d 415, 424 (D.C. Cir. 1991) (even when subject matter jurisdiction is predicated on a federal question, plaintiffs must rely on the D.C. long-arm statute to assert personal jurisdiction over out-of-district defendants). If a defendant's contacts within the forum are "continuous and systematic," a court may exercise general jurisdiction over a defendant with respect to a suit arising out of any subject matter unrelated to the defendant's activities within the forum. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415-16 (1984). A court may exercise specific jurisdiction to entertain controversies based on acts of a defendant that "touch and concern the forum." *Kopff v. Battaglia,* 425 F. Supp. 2d 76, 81 (D.D.C. 2006) (citing *Steinberg v. Int'l Criminal Police Org.,* 672 F.2d 927, 928 (D.C. Cir. 1981)). Second, the court must find that its exercise of jurisdiction comports with the requirements of constitutional due process. *See GTE New Media Servs.,* 199 F.3d at 1347.

General jurisdiction allows a court to adjudicate any claims brought against a defendant. *See Steinberg v. Int'l Criminal Police Org.*, 672 F.2d at 929. The D.C. Code grants a District of Columbia court general jurisdiction over a person who is "domiciled in, … or maintaining his … principal place of business in, the District of Columbia." D.C. Code § 13-422. But the Franklin County Defendants are not residents of the District of Columbia, Franklin County Defs.' Mot. to Dismiss at 3, and Plaintiff does not allege that they conduct any business in the District of

Columbia; to the contrary, Plaintiff alleges that they are officers of Franklin County, Ohio.[9] They are accordingly not subject to general jurisdiction under section 13-422.

Specific jurisdiction arises where a defendant engages in certain kinds of conduct enumerated in the District's long-arm statute.[10] *See* D.C. Code § 13-423(a). A court with specific jurisdiction may only adjudicate those claims that arise out of the conduct that triggered its jurisdiction. *Id*. § 13-423(b). Plaintiff does not specifically allege that the Franklin County Defendants engaged in any of the conduct listed in section 13-423(a). Indeed, there is no connection to the District of Columbia – of any sort – alleged.[11] Because Plaintiff failed to allege any conduct satisfying any of the prongs of section 13-423(a), this Court lacks specific jurisdiction over the Franklin County Defendants.

Even if the Court concluded that the statutory provisions of the D.C. Code supported jurisdiction, this Court could not exercise jurisdiction unless it comported with the requirements

---

[9] The Court takes judicial notice that Franklin County, Ohio, is approximately 400 miles from Washington, D.C.

[10] The D.C. long-arm statute provides that a District of Columbia court may exercise personal jurisdiction over a person as to a claim for relief arising from the person's (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia; (5) having an interest in, using, or possessing real property in the District of Columbia; (6) contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of the contracting, unless the parties otherwise provide in writing; or (7) marital or parent and child relationship in the District of Columbia (subject to certain enumerated conditions). D.C. Code § 13-423.

[11] Indeed, in a similar case in this district, *Bradley v. DeWine*, another judge in this district concluded that the court had no jurisdiction over local Ohio officials on the basis of any tortious injury caused in the District of Columbia by an act or omission outside of the District of Columbia even though the *plaintiff* in that case *lived* in the District of Columbia—whereas Plaintiff here lives in Ohio. *See Bradley v. DeWine*, No. 14-cv-110 (JDB), — F. Supp. 2d —, 2014 WL 3056513, at *5 (D.D.C. July 8, 2014).

of due process. The Court concludes that it would not comport with due process. This determination turns on whether a defendant's "minimum contacts" with the District of Columbia establish that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (internal citation and quotation marks omitted). Such minimum contacts must arise from some act by which the defendant "purposefully avails" himself of the privilege of conducting activities within the District of Columbia, invoking the "benefits and protections of its laws." *Asahi Metal Indus. Co. v. Super. Ct. of Cal., Solano Cty.,* 480 U.S. 102, 109 (1987). Put differently, the court "must insure that the defendant's conduct and connection with the forum 'are such that he should reasonably anticipate being hauled into court there.' " *Marshall v. Labor & Indus., State of Washington,* 89 F. Supp. 2d 4, 9 (D.D.C. 2000) (citing *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980)). Because Plaintiff does not allege that the Franklin County Defendants engaged in any conduct whatsoever in the District of Columbia, there is nothing to suggest that these defendants have purposefully availed themselves of the protections of D.C. law. *See Asahi Metal Indus. Co.,* 480 U.S. at 109. Nothing about the underlying events, relating to a foreclosure proceeding in Ohio, would lead these three county officials to expect that participating in the foreclosure process would open them to suit in a D.C. federal court.

In sum, Plaintiff has failed to allege facts that would allow this Court to exercise personal jurisdiction over the Franklin County Defendants. As a result, this Court lacks personal jurisdiction over these defendants, and the Court will grant their Rule 12(b)(2) motion to dismiss Plaintiff's claims against them.

**B.** *Rooker-Feldman* **Doctrine Bars Claims Against All Defendants**

The Franklin County Defendants argue that there is no subject matter jurisdiction "to the extent Terry challenges the decisions of Judge Cocroft" because of the *Rooker-Feldman* doctrine. Franklin County Defs.' Mot. to Dismiss at 4. In her opposition, Plaintiff does not respond to the Franklin County Defendants' argument based on the *Rooker-Feldman* doctrine. *See* Pl.'s Opp'n at 1-3. Because the Court concludes that *all* claims in this action either challenge the decisions of Judge Cocroft or are inextricably intertwined with that state-court judgment, the Court concludes that *all claims* in this action, against all defendants, are barred by this doctrine. The Court addresses this doctrine with respect to all defendants, including DeWine, because the Court is "obligated to assure [itself] that [subject matter] jurisdiction exists."[12] *Fogo De Chao*, 769 F.3d at 1138.

Under 28 U.S.C. § 1257, the United States Supreme Court has jurisdiction to review "[f]inal judgments or decrees rendered by the highest court of a State." 28 U.S.C. § 1257. The *Rooker-Feldman* doctrine, a judge-made corollary of section 1257, makes this jurisdiction exclusive. *Lance v. Dennis,* 546 U.S. 459, 463 (2006) (quoting *Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983)). The *Rooker-Feldman* doctrine "prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.' " *Id.* at 460 (citations omitted). "The doctrine applies only in 'limited circumstances,' where a

---

[12] In the Court's order dated October 14, 2014, ECF No. 15, the Court informed Plaintiff that it "question[ed] whether it has jurisdiction over the claims against DeWine because of, first, the principles of state sovereign immunity and, second, the doctrine barring collateral attacks on state-court judgments in federal court," citing several doctrines that might deprive the Court of jurisdiction, including the *Rooker-Feldman* doctrine. The Court ordered Plaintiff to show cause "that this Court has jurisdiction against DeWine notwithstanding the cases cited above." In her response, Plaintiff did not provide any legal arguments about why the cited doctrines did not bar jurisdiction. *See* Pl.'s Show Cause Response at 1-5.

party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Id.* at 466 (citation omitted). Therefore, the *Rooker-Feldman* doctrine bars a federal court from exercising jurisdiction over a claim only if three criteria are met. *See id.* at 462.

First, "[t]he party against whom the doctrine is invoked must have actually been a party to the prior state-court judgment." *Id.* Here, the prior state-court judgment at issue is the foreclosure decree issued against Plaintiff in the Franklin County Court of Common Pleas. *See* Franklin County Defs.' Mot. to Dismiss at 2; Compl. ¶ 1. Indeed, Plaintiff describes her participation in the underlying foreclosure action in order to explain why she is seeking relief in this action. *See id.* ("In this particular instance, Richard and Lue Cindy Terry … was fraudulently foreclosed on in the case of 13-CV-006485 and seeks to hold Defendants accountable to readdress in the matter with this court.") (emphasis omitted). The first prong of the *Rooker-Feldman* doctrine is satisfied.

Second, "the claim raised in the federal suit must have been actually raised or inextricably intertwined with the state-court judgment." *Lance,* 546 U.S. at 462. Because it is unclear exactly what Plaintiff is claiming in this action, other than generally seeking redress with respect to the foreclosure judgment, it is unclear whether Plaintiff *actually* raised the claims in this action in the foreclosure action. But claims are "inextricably intertwined" with a prior state-court judgment unless their "core" is "independent" of that judgment. *See Stanton v. Dist. of Columbia Court of Appeals,* 127 F.3d 72, 76 (D.C. Cir. 1997); *see also Kenmen Eng'g v. City of Union,* 314 F.3d 468, 476 (10th Cir. 2002) ("[W]e [ask] whether the state-court judgment caused, actually and proximately, the injury for which the federal-court plaintiff seeks redress.").

Insofar as the Court can make sense of the complaint, Plaintiff's complaint appears to allege that defendants conspired to abuse the judicial process in order to unlawfully deprive her

of her property. *See* Compl. at 3 ("Each Defendant KNOWINGLY and INTENTIONALLY engaged in a Conspiracy to commit and did commit the act of conducting a PONZI SCHEME, INSIDER TRADING, INSURANCE FRAUD, REAL ESTATE and MORTGAGE FRAUD, WIRE FRAUD, MONEY LAUNDERING, STRAW BUYING and TAX EVASION as on going criminal enterprise"). Far from being "independent" of the Franklin County Court judgment, the "core" of Plaintiff's claims is that the judgment of foreclosure was invalid. Indeed, among other relief, she seeks to overturn that judgment. *See* Compl. at 3 ("Any foreclosure decree, public sale or Sheriff's auction is demanded as Cease and desist upon filing of this complaint"); *id.* at 20 ("Plaintiff Moves this Court … to hold each individual Defendant liable for the crimes stated and to enforce the Possession and Revenue Recovery of the property in question"). Plaintiff's claims are therefore "inextricably intertwined" with the state-court judgment, satisfying the *Rooker-Feldman* doctrine's second requirement.[13]

The third and final requirement of the *Rooker-Feldman* doctrine is that "the federal claim must not be parallel to the state-court claim." *Lance,* 546 U.S. at 462. A federal claim is parallel to a state-court claim if it is filed after the state-court claim, but before the state court enters judgment. *See Exxon Mobil v. Saudi Basic Indus.,* 544 U.S. 280, 289-91 (2005). Therefore, the *Rooker-Feldman* doctrine deprives a federal court of jurisdiction over a claim only if it was brought in federal court after judgment was entered in a state court. *Id.* In this proceeding, Plaintiff "seeks to challenge the alleged free and clear title awarded to [the bank] in Civil foreclosure Case No. 13-CV-06485." Compl. at 1. While the date of the foreclosure decree issued in that action is not clear from the complaint, the complaint effectively acknowledges that

---

[13] Federal claims are independent of state-court judgments when they lodge a federal law challenge to a state rule. *Stanton,* 127 F.3d at 76 ("Applying *Rooker-Feldman* requires us to draw a line between permissible general challenges to rules and impermissible attempts to review judgments."). Plaintiff does not lodge such a challenge here.

the decree was issued prior to this lawsuit by referring to that judgment multiple times. In addition, the Court takes judicial notice of the state-court docket in Franklin County Case No. 13-CV-006485,[14] which shows that the foreclosure order was issued on June 9, 2014. The complaint in this action was filed on June 25, 2014 (and signed by Plaintiff the previous day)—after the Franklin County judgment issued. A foreclosure decree is "a final judgment of [an Ohio] state court." *In re Hoff,* 187 B.R. 190, 193 (Bankr. S.D. Ohio 1995). Given that Plaintiff filed her complaint in this Court after a final judgment was issued in the state-court foreclosure proceeding, which she seeks to challenge, the federal court claims are not parallel to the state-court proceeding. This sequence of events satisfies the *Rooker-Feldman* doctrine's third and final requirement.

The claims in this action meet all three of the *Rooker-Feldman* doctrine's criteria: Plaintiff was a party to the state-court foreclosure proceeding, the claims in this action are inextricably intertwined with that proceeding (if not actually raised in that proceeding), and this action was filed after the state-court final judgment. Although the Franklin County Defendants raise this defense only with respect to Judge Cocroft, this analysis is applicable to all three of the Franklin County Defendants, as well as to Defendant DeWine. None of the prongs of the *Rooker-Feldman* doctrine depend on the identity of the defendant. As long as the claims satisfy the three criteria of the *Rooker-Feldman* doctrine, as they do, this Court has no jurisdiction.

---

[14] A copy of the docket was filed in a related case before this Court, *Richard C. Terry v. First Merit National Bank. See Terry v. First Merit National Bank,* 14-cv-1197-CKK (D.D.C), Mot. to Dismiss, ECF No. 13, Ex. 2. The Court also confirmed the sequence of events by visiting the public docket of the Franklin County Court of Common Pleas. *See* Franklin County Clerk of Court website, http://fcdcfcjs.co.franklin.oh.us/CaseInformationOnline/caseSearch?cu1q93XzzT432wCeXcTB, last visited December 16, 2014.

Accordingly, this Court lacks subject matter jurisdiction over Plaintiff's claims against every defendant in this action.

**C. Jurisdiction Over Claims Against DeWine**

Despite the Court's determination that the *Rooker-Feldman* doctrine bars all claims against DeWine, the Court reviews several other jurisdictional bases for dismissing the claims against DeWine in the interest of thoroughness and given the lack of clarity in Plaintiff's filings. Because it is less than clear what relief Plaintiff seeks from DeWine and whether she is proceeding against him in his official capacity or his individual capacity, the Court considers those multiple possibilities.

   *1.  Nature of Claims Against DeWine*

It appears that Plaintiff seeks both monetary damages and injunctive relief in this action.[15] *See* Compl. at 8 ("The amount of this Civil Complaint is set at One Hundred Ninety-Five Thousand ($USD195,000.00) Dollars"); *id.* at 20 ("Plaintiff Moves this Court, through supervision of the United States Attorney General to refund the Civil Demand to herein Association and Plaintiff and to hold each individual Defendant liable for the crimes stated and to enforce the Possession and Revenue Recovery of the property in question."). Plaintiff does not distinguish among the defendants with respect to her claim for these monetary damages. *See*

---

[15] While Plaintiff stated in her complaint that she sought $195,000, she appears to seek a vastly higher amount in the default judgment motions. *See* Pl.'s Second Default Judgment Motion at 1 ("…Move this Court for an Immediate Default Judgment in the amount of the Demand, or ($104,799,000.00) for the Superseding government entity of the Federal Reserve Association of Fite & Co. Holdings"). The Court notes that this is approximately the amount claimed in a separate action in this district brought by 180 East Broad Street Partners, LLC doing business "by and through" the Federal Reserve Association of Fite & Co. Holdings, demanding damages in the amount of $104,799,059.54. *See 180 East Broad Street Partners LLC v. Ohio Department of Taxation*, 13-cv-1285-RJL (D.D.C.), Compl., ECF No. 1, at 6. The Court is unclear whether that similarity suggests a drafting error in this action. In any event, the amount of the demand has no relevance because the Court has no jurisdiction over any claims in this action.

Compl. ¶ 8 ("making each individual Defendant liable…"). Insofar as Plaintiff seeks injunctive relief with respect to the foreclosure and sale of the subject property, as well as seeks to compel investigations about alleged fraud surrounding the foreclosure, Plaintiff appears to seek such relief from Defendant DeWine. *See, e.g.*, Compl. at 2-3 ("Although this instant matter is filed separate from the evidentiary foreclosure case; all consolidated directly implicates the Attorney General for the State of Ohio.")

In response to the Court's October 14, 2014, Order requiring Plaintiff to show cause why this Court has jurisdiction over Plaintiff's claims against defendant, Plaintiff clarified that she was only suing DeWine in his individual capacity:

> Defendant DeWine was not sued in the capacity of "Attorney General", as that would create a conflict of interest with the U.S. Government that would result in a dismissal of the herein case against Plaintiff. Defendant DeWine being sued in his individual capacity does not insulate or protect this Defendant from direct suit in this venue for not protecting the consumer credit rights of Plaintiff that resulted in a foreclosure decree being placed against Plaintiff in the Franklin County Court of Common Pleas.

Pl.'s Show Cause Response at 2. Because Plaintiff does not explain how she seeks any such injunctive relief from DeWine in his personal capacity when all such relief appears to pertain to his role as a government official,[16] the Court addresses the relief sought with respect to both DeWine's individual and official capacities.

2. *No Jurisdiction Over Claims for Money Damages Against DeWine in Official Capacity*

Insofar as Plaintiff seeks to recover money damages from the State of Ohio by suing DeWine in his official capacity, this Court has no subject matter jurisdiction over the claims in

---

[16] Ultimately, however, the Court need not dwell on this puzzle because of the conclusion below that Plaintiff has not properly served DeWine in his individual capacity.

this action because of state sovereign immunity.[17] "[A]n unconsenting State is immune from

suits brought in federal courts by her own citizens as well as by citizens of another State."

*Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Eleventh Amendment sovereign immunity

protects state officials sued in their official capacities, as well. *See Kentucky v. Graham*, 473

U.S. 159, 167 (1985).

"Although a state can waive its sovereign immunity under the Eleventh Amendment,

waiver is the exception rather than the rule." *Bradley v. DeWine*, 2014 WL 3056513, at *4*; see

*also Edelman,* 415 U.S. at 671-74 ("The mere fact that a State participates in a [federal] program

... is not sufficient to establish consent on the part of the State to be sued in the federal courts.");

*Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 72 (1996) ("[T]he Eleventh Amendment prevents

congressional authorization of suits by private parties against unconsenting States."). While

Plaintiff claims that the State of Ohio has waived its sovereign immunity pursuant to the

Eleventh Amendment, *see* Compl. at 2, she provides no support for the conclusion that Ohio has

waived its immunity from suit in *federal court*. Indeed, it appears that none exists. *See Bradley v.*

*DeWine*, 2014 WL 3056513, at * 4; *Lee Testing & Eng'g v. Ohio Dept. of Transp.,* 855 F. Supp.

2d 722, 726 (S.D. Ohio 2012) ("Ohio has not waived its Eleventh Amendment immunity from

suits for money damages in federal court."); *cf. Turker v. Ohio Dept. of Rehab. and Corr.,* 157

F.3d 453, 457 (6th Cir. 1998) (Ohio has not waived immunity with respect to suits for violations

of state law in federal court). Plaintiff has failed to carry her burden of showing that Ohio has

waived its sovereign immunity and that, therefore, this Court has jurisdiction over a money

---

[17] Even though DeWine never filed an appearance in this action and, therefore, made no arguments about sovereign immunity, DeWine raised precisely this defense in another case in this district. *See Bradley v. DeWine*, 2014 WL 3056513, at *3 ("DeWine first argues that he is immune from Bradley's claims for money damages under the Eleventh Amendment."). In that case, the district judge concluded that the sovereign immunity of the State of Ohio deprived the court of subject matter jurisdiction over the money damages claim. *See id*. at *4.

damages claim. *See Kokkonen,* 511 U.S. at 377 (concluding that burden of demonstrating Court's jurisdiction falls on Plaintiff). The Eleventh Amendment deprives this Court of subject matter jurisdiction over Plaintiff's money damages claim against DeWine in his official capacity.

   3.   *Insufficient Service of Process on DeWine in Personal Capacity*

   As an initial matter, whether DeWine was properly served is a jurisdictional issue. *Winston & Strawn LLP,* 2014 WL 2598748, at *1 (" '[F]ederal courts lack the power to assert personal jurisdiction over a defendant unless the procedural requirements of effective service of process are satisfied.' ") (quoting *Mann v. Castiel,* 681 F.3d 368, 372 (D.C. Cir. 2012)). "It is well established … that 'before a court may exercise personal jurisdiction over a defendant, there must be more than notice to the defendant.' " *Freedom Watch, Inc. v. Org. of the Petroleum Exporting Countries*, 766 F.3d 74, 81 (D.C. Cir. 2014) (quoting *Omni Capital Intern., Ltd. v. Rudolf Wolff & Co.,* 484 U.S. 97, 104 (1987)). Indeed, notice " 'cannot by itself validate an otherwise defective service.' " *Id.* (quoting *Grand Entertainment Grp. v. Star Media Sales, Inc.*, 988 F.2d 476, 492 (3d Cir. 1993). Accordingly, the Court considers *sua sponte* whether there was proper service of process on DeWine in his personal capacity.[18]

   Pursuant to Federal Rule of Civil Procedure 4(m), "[i]f a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." The 120 day period allowed by Rule 4(m) elapsed on October 23, 2014. But Rule 4(m) also requires the Court to "extend the time for service for an appropriate period" if "the plaintiff shows good cause for the failure." Fed. R. Civ. P. 4(m). In response to

---

[18] Indeed, the fact that DeWine did not raise this issue as a result of not filing an appearance is consistent with—rather than contrary to—the conclusion that he was not properly served.

the Court's Order dated October 14, 2014, asking Plaintiff to demonstrate why the Court has subject matter jurisdiction over the claims against Ohio Attorney General Michael DeWine, Plaintiff responded that she had not sued DeWine in "in the capacity of 'Attorney General,' " but rather had sued him in his individual capacity. In a subsequent order, dated November 12, 2014, the Court informed Plaintiff that "[i]nsofar as Plaintiffs are suing DeWine in his individual capacity, the docket does not reflect that they have effectively served him in this capacity." The Court extended the deadline for filing proof of service on the docket, and informed Plaintiff that she must file proof of proper service by November 29, 2014, to avoid dismissal of the claims against DeWine in his individual capacity. Plaintiff responded but did not file any additional proof of service on the docket. Instead, she first appears to argue that there is no distinction among the various capacities in which one could sue DeWine. *See* Pl.'s Service Response at 1 ("The matter deal with process of service upon the 'individual MICHAEL DEWINE as opposed to the public office of 'ATTORNEY GENERAL'. … Plaintiff wishes to point out that this Court cannot argue that MICHAEL DEWINE was in fact 'Elected' to the position of 'ATTORNEY GENERAL'; 'OHIO ATTORNEY GENERAL'; or 'ATTORNEY GENERAL FOR THE STATE OF OHIO'. All of these titles are essentially the same, despite being referenced to as 'individual'. …"). Although she does not present any legal arguments, Plaintiff also appears to claim that the prior service was proper. *See id*. at 3 ("Lastly, process of service was delivered to the office of MICHAEL DEWINE or 'ATTORNEY GENERAL' by United States Certified Mail, Return Receipt Requested.") This response does not demonstrate that DeWine was properly served in his individual capacity.

Ultimately, Plaintiff has yet to effectively serve DeWine in his individual capacity. The only proof of service filed on the docket is an affidavit of service and return receipt card,

showing receipt of the mail delivery addressed to Michael DeWine, at 30 E. Broad Street, 16th

Floor, Columbus, OH 43215. The Court takes judicial notice that this is the address of the office

of the Attorney General of Ohio. Although service by mail is not one of the methods of service

generally allowed by Federal Rule of Civil Procedure 4, Rule 4(e) also allows service "following

state law for serving a summons in an action brought in courts of general jurisdiction in the state

where the district court is located or where service is made." Both the District of Columbia and

the State of Ohio allow service by mail in certain circumstances. But Plaintiff has not effectively

used this method of service to serve DeWine in his individual capacity.

With respect to D.C. law, Plaintiff has not provided the requisite proof that the individual

that received the service of process was "authorized to accept service on behalf of defendant[] in

their individual capacity[y]." *Anderson v. Gates*, No. CV 12-1243 (JDB), — F. Supp. 2d —,

2013 WL 6355385, at *5 (D.D.C. Dec. 6, 2013); *see also Toms v. Hantman*, 530 F. Supp. 2d

188, 191 (D.D.C. 2008) (no proper service under D.C. law by sending the summons and

complaint by certified mail to defendant's business address). Although the signature of the

person who signed on behalf of the delivery to the Ohio Attorney General's office is not entirely

legible, it is a fair inference that it was someone authorized to receive business mail only.[19]

There is no reason to assume that such a person was authorized to receive service of process

upon DeWine in his individual capacity, and Plaintiff has not even attempted to show that the

recipient was so authorized.

With respect to Ohio law, the Ohio Rules of Civil Procedure allow service by certified or

express mail "evidenced by return receipt signed by any person." Ohio R. Civ. P. 4.1(a)(1)(A).

---

[19] While the exact name is not clear, it is clear that it is not Defendant DeWine's signature. The first name appears to be Harvey and the last name appears to begin with a "W." *See* Affidavit of Service, ECF No. 3, at 2.

The Ohio Supreme Court has acknowledged the risks in service by certified mail because of "the oftentimes numerous intermediate, and frequently uninterested, parties participating in the chain of delivery." *Akron-Canton Regional Airport Auth. v. Swinehart*, 406 N.E.2d 811, 813-14 (Ohio 1980). "[T]he best course of action, however, is not to entirely foreclose service to individuals at their business address, but rather to examine each case upon its particular facts to determine if notice was reasonably calculated to reach the interested party." *Id*. at 814. In these circumstances, the Court concludes that service to Attorney General DeWine at his work address, as represented by Plaintiff, was not reasonably calculated to give him notice that he is being sued in his individual capacity.[20] Neither the way in which the delivery was addressed nor the complaint itself makes it clear that it was being sent to DeWine in his individual capacity. With that delivery in hand, a named-but-unidentified person signed for the delivery containing the complaint, but Plaintiff has provided no evidence that such an individual was authorized to accept the package as an agent for Defendant DeWine in his individual capacity. *Cf. id*. (service by certified mail must comport with the requirements of due process); *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.")

Accordingly, insofar as Plaintiff seeks to proceed in this action against DeWine in his personal capacity, those claims are dismissed pursuant to Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process.

\*      \*      \*

---

[20] The Court informed Plaintiff of this very conclusion in its November 12, 2014, Order, but Plaintiff did nothing to remedy the ineffective service.

In sum, to the extent that Plaintiff seeks monetary damages by suing DeWine in his official capacity, those claims are dismissed because the Court has no jurisdiction over them as a result of state sovereign immunity. To the extent that Plaintiff seeks *any* relief from DeWine in his personal capacity, those claims are dismissed because of insufficient service of process. In addition, as discussed above, all claims against the Franklin County Defendants are dismissed because of the lack of personal jurisdiction over them, and all claims in this action are dismissed because of the absence of subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

## D. Motions for Default Judgment

Plaintiff filed an initial [4] Motion for Immediate Default Judgment and Award before any Defendant had filed an appearance in this action. Pursuant to the schedule set by the Court in response to the Franklin County Defendants' request for an extension to respond to the complaint and to that default judgment motion, the Franklin County Defendants filed a [7] Motion to Dismiss and an [8] opposition to Plaintiff's first Default Judgment Motion. Five days after the Franklin County Defendants filed a Motion to Dismiss, Plaintiff filed a second [10] Motion for Default Judgment and Award.[21] The Court's conclusion that all the claims in this action must be dismissed for the several jurisdictional reasons discussed above all but resolves Plaintiff's first

---

[21] Insofar as the second default judgment motion was directed against the Franklin County Defendants, it was improper because they had entered an appearance and filed a motion to dismiss. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); *Lanny J. Davis & Associates LLC v. Republic of Equatorial Guinea*, 962 F. Supp. 2d 152, 161 (D.D.C. 2013) ("To obtain a default judgment under Federal Rule of Civil Procedure 55, a plaintiff must undertake two steps. First, the plaintiff should request that the Clerk of the Court enter a default … . Once default has been entered, the plaintiff may move for default judgment.") (citations omitted). Insofar as this motion was directed against Defendant DeWine, Plaintiff should have moved the Clerk of the Court to enter a default prior to moving the court for a default judgment. But these procedural flaws have no impact on the outcome because the Court lacks jurisdiction over all claims in this action in the first instance.

and second default judgment motions. The Court cannot enter a default judgment when it lacks

jurisdiction over an action. *See Mohammadi v. Islamic Republic of Iran*, 947 F. Supp. 2d 48, 61

(D.D.C. 2013), *reconsideration denied (July 12, 2013)*. Given that the Court lacks jurisdiction

over all of the claims in this action, as the court concludes in the previous sections of this

opinion, a default judgment in this case, against any of the defendants, would be improper. Only

brief additional discussion is warranted in the interest of completeness.

Even though the Court did not analyze whether it had personal jurisdiction over DeWine

with respect to the motion to dismiss,[22] that analysis is proper with respect to the motions for

default judgment. The Court "should satisfy itself that it has personal jurisdiction before entering

judgment against an absent defendant." *Mwani v. bin Laden*, 417 F.3d at 6. However, "[i]n the

absence of an evidentiary hearing, although the plaintiffs retain 'the burden of proving personal

jurisdiction, [they] can satisfy that burden with a prima facie showing.' " *Id.* at 7 (quoting

*Edmond v. United States Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991)).

Although "plaintiffs are not limited to evidence that meets the standards of admissibility required

by the district court" and "may rest their argument on their pleadings, bolstered by such

affidavits and other written materials as they can otherwise obtain," *id.*, Plaintiff here has not

done so.

Plaintiff has not made any allegations, nor provided any other affidavits or documents,

suggesting that there is general jurisdiction or specific jurisdiction over DeWine pursuant to the

---

[22] The Court did not analyze its personal jurisdiction over DeWine above with respect to its
dismissal of the claims in this action because "a court may not *sua sponte* dismiss for want of
personal jurisdiction, at least where a defendant has entered an appearance." *Kapar v. Kuwait
Airways Corp.*, 845 F.2d 1100, 1105 (D.C. Cir. 1988). Although this is a case where Defendant
DeWine *has not* entered an appearance, the Court need not decide whether this would be an
appropriate circumstance to consider dismissing claims against Defendant DeWine, *sua sponte*,
based on personal jurisdiction given that there are other grounds that require dismissal of those
claims.

laws of the District of Columbia. *See* D.C. Code §§ 13-422, 13-423. Plaintiff has not alleged that DeWine has contacts with the District of Columbia that are "continuous and systematic" supporting general jurisdiction. *See Helicopteros Nacionales de Colombia,* 466 U.S. at 415-16. Specifically, Plaintiff has not alleged that DeWine either lives or works in Washington, D.C.[23]

Nor has Plaintiff alleged that DeWine has any connections to the District of Columbia with respect to this action in particular. Plaintiff's two sole references to connections between the Attorney General of Ohio and litigation in the United States District Court for the District of Columbia are insufficient to establish specific jurisdiction. *See* Compl. at 17 ([E]ffective October 28, 2013, the United States District Court for the District of Columbia issued Exemplified certificated documents to Plaintiff as part of a Non-Judicial proceeding against the Ohio Department of Taxation and Attorney General Jim Petro of the Revenue Recovery Enforcement Collection Section, supervised by Michael DeWine; Attorney General for the State of Ohio."); *id.* at 7. ("The Ohio Department of Taxation and Attorney General Jim Petro of the Revenue Recovery Enforcement Collections Section was involved in a direct suit in the United States District Court for the District of Columbia; Case No. 1:14-CV-00110-JDB."). Being hauled into court as a *defendant*, as DeWine was in the case that Plaintiff references, is far from enough to establish that Defendant "purposefully availed" himself of the protections of D.C. law. *See Asahi Metal Indus. Co.,* 480 U.S. at 109. Ultimately, Plaintiff has not suggested any basis for the Court to exercise personal jurisdiction over DeWine in this action. For this reason, in addition to all of the reasons stated above, Plaintiff's first and second default judgment motions are denied.

---

[23] The Court notes that it would be unusual if DeWine did work or live in Washington, D.C., given that he is currently serving as the Attorney General of Ohio.

## V. CONCLUSION

For the foregoing reasons, the Franklin County Defendants' [7] Motion to Dismiss is GRANTED. The Court concludes that it does not have personal jurisdiction over the Franklin Country Defendants and that it does not have subject matter jurisdiction over the claims against those defendants as a result of the *Rooker-Feldman* doctrine. The Court *sua sponte* dismisses all the claims against Defendant DeWine. Not only are those claims barred by the *Rooker-Feldman* doctrine as well, but the Court concludes that there is no jurisdiction over money damages claims against DeWine in his official capacity because of Ohio's sovereign immunity and that all the claims against DeWine in his personal capacity fail because of ineffective service of process. In addition, for the foregoing reasons, the Court DENIES both Plaintiff's first [4] Motion for Immediate Default Judgment and Award and Plaintiff's second [10] Motion for Immediate Default Judgment and Award. Accordingly, the Court DISMISSES this action in its entirety. An appropriate Order accompanies this Memorandum Opinion.

Dated: December 17, 2014

　　　　　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　　　　　COLLEEN KOLLAR-KOTELLY
　　　　　　　　　　　　　　　　　　　　　United States District Judge